**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: KEFFER DEVELOPMENT SERVICES, LLC, DATA SECURITY BREACH LITIGATION** | MDL No. 3159 (MDL pending) |

**DEFENDANT LOYOLA UNIVERSITY CHICAGO'S RESPONSE TO MOTION OF KEFFER DEVELOPMENT SERVICES, LLC'S MOTION TO TRANSFER RELATED CASES FOR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Respectfully submitted,

By: */s/ Molly S. DiRago*
Molly S. DiRago
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker Drive, Suite 4100
Chicago, IL 60606
312.759.1926 (telephone)
molly.dirago@troutman.com

-and-

Angelo A. Stio III
TROUTMAN PEPPER LOCKE LLP
301 Carnegie Center Drive
Suite 400
Princeton, New Jersey 08543-5276
609.951.4125 (telephone)
Angelo.Stio@troutman.com

*Attorneys For Loyola University Chicago*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. BACKGROUND ................................................................................................................. 2

III. LEGAL STANDARD ......................................................................................................... 4

IV. ARGUMENTS AND AUTHORITIES ............................................................................... 4

    A. There Are Not Sufficiently Complex or Numerous Common Questions Of Fact To Justify Consolidating The Related Actions. ................................................................. 4

    B. Keffer Has Not Demonstrated Consideration of Alternatives to Centralization ........... 8

V. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Statutes**

28 U.S.C. § 1407(a). .................................................................................................................. 3

**Cases**

*In re Cable Tie Pat. Litig.*,
  487 F. Supp. 1351, 1354 (J.P.M.L. 1980). ............................................................................. 4

*In re Cash Sweep Programs Cont. Litig.*,
  766 F. Supp. 3d 1346, 1350 (U.S. Jud. Pan. Mult. Lit. 2025).................................................. 10

*In re Com. Lighting Prods., Inc. Cont. Litig.*,
  415 F. Supp. 392, 393 (J.P.M.L. 1976); .................................................................................. 5

*In re Nat'l Grid Tax Gross-Up Adder Litig.*,
  669 F. Supp. 3d 1381, 1382 (U.S. Jud. Pan. Mult. Lit. 2023)............................................... 8, 10

*In re Paycheck Prot. Program (PPP) Agent Fees Litig.*,
  481 F. Supp. 3d 1335, 1377 (J.P.M.L. 2020) ........................................................................... 5

*In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*,
  206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) ............................................................... 5, 6, 7, 8

*In re Prempro Prods. Liab. Litig.*,
  254 F. Supp. 2d 1366 (J.P.M.L. 2003) ..................................................................................... 8

*In re Transocean Ltd. Sec. Litig. (No. II)*,
  753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). .......................................................................... 9

*In re Westinghouse Elec. Corp. Emp. Discrimination Litig.*,
  438 F. Supp. 937, 939 (J.P.M.L. 1977); ................................................................................... 5

*In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*,
  804 F. Supp. 2d 1376, 1379 (U.S. Jud. Pan. Mult. Lit. 2011).................................................. 6, 9

*In re: Convergent Outsourcing, Inc., Fair Debt Collection Pracs. Act (FDCPA) Litig.*,
  84 F. Supp. 3d 1369, 1370 (U.S. Jud. Pan. Mult. Lit. 2015)..................................................... 6, 7

*In re: Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
  899 F. Supp. 2d 1378, 1379–80 (U.S. Jud. Pan. Mult. Lit is it. 2012 ....................................... 10

**Other Authorities**

Manual for Complex Litigation, Fourth, § 20.14 (2004).................................................................. 7

## I. PRELIMINARY STATEMENT

Loyola University Chicago ("Loyola") objects to Keffer Development Services, LLC's ("Keffer") Motion to Transfer Related Cases for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 ("Motion") [Dkt. 1]. Although Keffer argues that it is a defendant in "thirteen identical cases" pending in various federal courts, this statement is inaccurate in many respects. Only eight of the thirteen cases involve identical defendants. These eight cases have already been consolidated in the Eastern District of Michigan (the "Michigan Cases") [Dkt. 1, pp. 2-3, fn. 1]. The remaining five cases each name a different university located in a different state as a defendant, and include Loyola University Chicago (Illinois), Malone University (Ohio), California State University, San Bernadino (California), High Point University (North Carolina), and Simmons University (Massachusetts) (collectively, the "University Case(s)" and, with the Michigan Cases, the "Related Actions").[1] None of the University Cases include the University of Michigan as a Defendant. None of the University Case defendants "hold as central role in the alleged scheme as Michigan," which employed Matthew Weiss, the alleged perpetrator of such scheme. [Dkt. 1, p. 13]. Instead, the University Case defendants were themselves victims of the alleged scheme. [Dkt. 1, p. 3]. For these reasons, the five University Cases necessarily involve unique factual questions and defendant-specific issues that lack commonality with each other, and, even more significantly, lack commonality with the Michigan Cases. Accordingly, consolidation of the already consolidated Michigan Cases with the University Cases would not promote the just resolution of either the Michigan Cases or the University Cases. Additionally, there is no evidence in Keffer's Motion that it has considered alternatives to centralization and, as such, Keffer has failed to meet

---

[1] The University Cases are pending in various federal court districts, including the Northern District of Illinois, the Northern District of Ohio, the Central District of California, the Middle District of North Carolina, and the District Court of Massachusetts. (Mot. p. 4.)

1

its burden to establish that transfer and consolidation of the University Cases with the Michigan Cases is warranted. Accordingly, Keffer's Motion should be denied.

## II. BACKGROUND

The Related Actions include twelve putative nationwide class action lawsuits and one putative mass tort lawsuit brought by "Jane Doe" plaintiffs against different universities. The unnamed plaintiffs allege they were harmed when former University of Michigan football coach Matthew Weiss ("Weiss") allegedly hacked into the cloud-based software and database system that was developed, owned, and operated by Keffer and known as the Athletic Trainer System (the "ATS System"). Such system was used by university athletic departments to enter and maintain medical and training related information of student athletes. As a result of such hacking, Weiss allegedly obtained certain personal information from Keffer's ATS System, and then leveraged such information to further "hack into the social media, email, and cloud storage accounts" of such student athletes, where he acquired personal, intimate images and videos. [Dkt. 1, p. 2].

Keffer and Weiss are named defendants in all of the Related Actions. Weiss has been indicted by the U.S. Attorney for the Eastern District of Michigan on 24 counts of unauthorized access to Keffer's ATS System and to certain university computers (including the University of Michigan's computers, but not the computers of any of the five University Case defendants) and aggravated identify theft. Such theft included both his unauthorized access to student-athlete information in Keffer's ATS System and his leveraging of such information to obtain further unauthorized access to the personal email and social media accounts of such student-athletes. Each of the universities named as defendants in the Related Actions allegedly contracted with Keffer to use the ATS System though the nature, extent, and duration of each university's use of the ATS System, and each such university's separate communications with Keffer, varied from user to user.

While the Related Actions all name Keffer and Weiss as defendants, the commonality of interests and defendants ends there. The Michigan Cases all include two additional, but related defendants—the Regents of the University of Michigan and the University of Michigan (the "University of Michigan"). The University Cases do not include the University of Michigan as a defendant. Instead, the additional named defendants in the University Cases are unique universities, as identified above.

Accordingly, the predominant factual issues for the University Cases are likely to be unique and the legal claims in each case will vary according to the nature, extent, and duration of each University Case defendant's use of the ATS System, such university's communications with Keffer, and how Weiss exploited the ATS System to obtain the student-athlete personal information of such university's student athletes. Indeed, many alleged facts in the University Cases differ from those in the Michigan Cases. For instance, the lawsuit against Loyola does not allege that Weiss ever had any contact with Loyola. In contrast, the Michigan Cases focus on the fact that Weiss worked for defendant University of Michigan. As a second example, the Michigan Cases include allegations that Weiss accessed the University of Michigan's servers and its email provider. The lawsuit against Loyola does not allege that Weiss accessed Loyola's servers or its email provider. While there may be some common factual questions related to Keffer's actions and obligations, these questions are not so complex or significant to justify consolidation of all the Related Actions.

Additionally, Loyola has filed a motion to dismiss that is currently pending, which seeks dismissal of all of Plaintiff's claims against it. Given that the Related Actions are all in the nascent stages of litigation, it is likely that the other named defendants will also seek dismissal of the claims against them as well. Accordingly, it is possible that the multidistrict nature of the Related Actions

may be resolved in short order though motion practice without the need for transfer and consolidation.

Loyola agrees that transferring and consolidating all the Michigan Cases was appropriate given the identical defendants in such cases and the common factual and legal questions involved in each case. However, the University Cases all have different defendants and different factual narratives. Loyola disagrees that transfer and consolidation of the Related Actions would promote either just or efficient conduct of this litigation. Loyola thus requests that Keffer's Motion be denied, and the University Cases be permitted to continue as individual lawsuits in their respective venues.

### III. LEGAL STANDARD

The Panel may transfer "civil actions involving one or more common questions of fact" that "are pending in different districts" to a single district "for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Transfer is appropriate when (1) the civil actions involve "common questions of fact"; (2) transfer will be "for the convenience of the parties and witnesses"; and (3) transfer will "promote the just and efficient conduct of such actions." *Id.* The party seeking consolidation must show that transfer "will further the purposes of Section 1407." *In re Cable Tie Pat. Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980).

### IV. ARGUMENTS AND AUTHORITIES

**A. There Are Not Sufficiently Complex or Numerous Common Questions Of Fact To Justify Consolidating The Related Actions.**

Consolidation of the Related Actions is not warranted because the University Cases do not share sufficiently common or complex questions of fact with the Michigan Cases. Centralization is not appropriate where individual rather than common factual questions predominate. *In re Westinghouse Elec. Corp. Emp. Discrimination Litig.*, 438 F. Supp. 937, 939 (J.P.M.L. 1977); *see*

4

*also In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer where "unique questions of fact predominate over any common questions"); *see also In re Paycheck Prot. Program (PPP) Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1377 (J.P.M.L. 2020) (denying centralization because the "policies and practices for paying agent fees were unique to each lender which differ significantly across the actions"). Even where related actions share dominant questions of fact, consolidation is still not warranted when those common factual questions are not sufficiently complex. *In re Com. Lighting Prods., Inc. Cont. Litig.*, 415 F. Supp. 392, 393 (J.P.M.L. 1976); *see also In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (U.S. Jud. Pan. Mult. Lit. 2011) (noting that where similar cases are "relatively straightforward" consolidation is not warranted because the cases can proceed "just as efficiently without centralization.").

This was the case in *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, where the U.S. Judicial Panel on Multidistrict Litigation (the "Panel"), denied a motion to consolidate five actions on the basis that "unique questions of fact predominated over any common questions of fact." *In re Pharmacy*, 206 F. Supp. 2d at 1363. The Panel noted that each of the five cases involved different defendants, who each were only a defendant in a single action, and the only actions involving the same defendants were already consolidated to the same district. *Id*. The facts in *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, are substantially similar to those here and warrant denial of Keffer's motion to consolidate.

In another case, the Panel denied a motion to consolidate a series of cases filed by consumers against a single debt collection agency based on a determination that the factual issues common to all of the cases were not complex enough to warrant consolidation. *In re: Convergent Outsourcing, Inc., Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 84 F. Supp. 3d 1369, 1370

5

(U.S. Jud. Pan. Mult. Lit. 2015). In that instance, the Panel noted that even though all of the individual cases dealt with the same factual question regarding the specific statements contained in a debt collection letter sent by the collection agency to the consumer-plaintiffs, the contents of the letter was not truly in dispute and this factual question was not complex enough to warrant consolidation of the related actions. *Id.*

Similarly, here, although there may be some common factual *questions* regarding the ATS System, the contract that was signed to license the use of such system, and the information that each university received from Keffer regarding how to use the ATS system, these common factual questions will likely have defendant-specific *answers*. Indeed, in its Motion, Keffer concedes that there are common questions of fact that will have defendant-specific answers, such as: what "specific data systems" Keffer provided to each university; what "types of data" the systems stored for each university; what information Keffer provided to each university about "system vulnerabilities or security features;" whether a given university was "adequately informed about how to configure and maintain security environments with Keffer's products;" and whether sensitive data of a specific university's student-athletes was actually accessed in each case and, if so, the extent of the breach. [Dkt. 1 at pp. 7-8]. Because each of the University Case defendants had its own transactional relationship and communications with Keffer, and its own specific uses of Keffer's ATS System, and suffered its own specific breaches of such system, the answers to these common factual questions will be unique in each case. *See In re Pharmacy*, 206 F. Supp. 2d at 1363. Because of this, individualized issues will predominate over any common questions of fact and each defendant would be uniquely positioned to raise questions or issues that lack commonality as to any other defendant, requiring individualized adjudication and resolution. All these considerations make consolidation inappropriate.

Additionally, the common questions of fact presented in the University Cases are not so complex that consolidation is warranted. Unlike in *In re Prempro Products Liability Litigation*, where the predominate fact questions involved complicated issues related to the development, testing, manufacturing, and marketing of a specific drug, the common factual questions here are not so technical or involved as to make the accompanying discovery so time consuming and costly as to justify transfer under Section 1407. *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366 (J.P.M.L. 2003); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); *see In re Nat'l Grid Tax Gross-Up Adder Litig.*, 669 F. Supp. 3d 1381, 1382 (U.S. Jud. Pan. Mult. Lit. 2023) (finding that informal coordination was sufficient to avoid unnecessary duplication of effort where common factual questions were not "sufficiently complex or numerous").

Loyola does not contest the consolidation of the Michigan Cases into a single district. Such cases all name Keffer, Weiss, and the University of Michigan as defendants (and include no other defendants), and so it is reasonable to conclude that common questions of fact would predominate in those cases. But the logic justifying such consolidation does not apply to the University Cases. *See In re Pharmacy*, 206 F. Supp. 2d at 1363 (holding that consolidation was not warranted where the five cases involved different defendants who were only a defendant in a single action, and the only actions involving the same defendants were already consolidated to the same district). Accordingly, the only consolidation among the Related Actions that is warranted has already been completed and consolidating the remaining cases would not serve the overall convenience of the parties or promote the just and efficient conduct of the litigation.

**B.  Keffer Has Not Demonstrated Consideration of Alternatives to Centralization.**

Keffer fails to meet its burden to establish that there is a legitimate need for consolidation of the Related Actions and, in fact, fails to even consider alternatives to consolidation in its Motion. Caselaw is clear that Section 1407 centralization "should be the last solution after considered review of all other options." *In re Best Buy Co., Inc.*, 804 F. Supp. 2d at 1378. Additionally, "[w]here only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010).

Indeed, there are suitable alternatives to consolidation that would minimize the possibility of any duplicative discovery for the common defendants, Keffer and Weiss. For instance, "notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the [other] courts directing the parties to coordinate their pretrial efforts." *In re Eli Lilly & Co.*, 446 F. Supp. at 244. Keffer has failed to consider these alternatives or provide an explanation as to why they are insufficient.

Loyola has no interest in duplicative discovery and inconsistent pretrial rulings. *In re: Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379–80 (U.S. Jud. Pan. Mult. Lit is it. 2012); *see also* Manual for Complex Litigation, Fourth, § 20.14 (2004). But such concerns are readily mitigated by coordinated actions such as those described in the above paragraph. Because discovery is likely to be defendant-specific, there is little risk of inconsistent rulings or undue burdens caused by differing pretrial schedules among the University Cases if they are not consolidated. *See In re Cash Sweep Programs Cont. Litig.*, 766 F. Supp. 3d 1346, 1350

(U.S. Jud. Pan. Mult. Lit. 2025) (alternatives to consolidation were sufficient to promote judicial efficiency where the putative classes asserted by plaintiffs were defendant-specific and would result in defendant-specific discovery).

Additionally, Loyola has filed a Motion to Dismiss seeking full dismissal of Plaintiffs' two count claim against it, and other defendants in the University Cases are likely to seek similar dismissals of the claims against them. As such, it is possible that the multidistrict character of this litigation could be resolved through resolution of these motions, negating the need for consolidation. *In re Nat'l Grid Tax*, 669 F. Supp. 3d at 1382 (citing *In re Gerber,* 899 F. Supp. 2d at 1379). Furthermore, requiring Loyola to participate in discovery and pretrial proceedings in a consolidated multidistrict litigation would create an undue burden and unfair hardship. Should Keffer's Motion be granted, Loyola would seek a stay in the MDL pending a ruling on Loyola's Motion to Dismiss, which would cause an undue delay and unfair burden on the other parties involved in the litigation. Accordingly, consolidation of these cases would not work to promote efficiency but would merely force the differently situated defendants into a single, inefficient proceeding.

While Keffer expresses concern over the need to "conserve the resources of the parties" and "ease the burdens on the parties," (Dkt. 1, at pp. 6, 8, 10] such concerns are inapplicable to Loyola and the other defendants in the University Cases. A consolidation of the Related Cases, leading to "various and numerous counsel working on this matter" [Dkt. 1, p. 9), makes it far more likely that the litigation costs and burdens of Loyola and the other University Case defendants will be increased.

## V.  CONCLUSION

For the foregoing reasons, Defendant Loyola University of Chicago asks that the Panel deny Keffer Development Services, LLC's Motion to Transfer Related Cases for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 [Dkt. 1] and grant to Loyola all other relief, whether at law or in equity, to which it is entitled.

BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: KEFFER DEVELOPMENT SERVICES, LLC, DATA SECURITY BREACH LITIGATION | MDL No. 3159 (MDL pending) |

**PROOF OF SERVICE**

I hereby certify that on June 30, 2025, I electronically filed the foregoing document, with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties registered with ECF.

I further certify that on June 30, 2025, a copy of the forgoing was served on the following parties by First-Class Mail, as follows:

Matthew Weiss
2075 W Stadium Blvd.
#1066
Ann Arbor, MI 48106

Respectfully submitted,

/s/ Molly S. DiRago
Molly S. DiRago
**TROUTMAN PEPPER LOCKE, LLP**
111 S. Wacker Dr., Suite 4100
Chicago, IL 60606
Phone: (312) 443-0700
Email: molly.dirago@troutman.com
ARDC#: 6282757

11